**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FILED

JUL 31 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

ATLANTIC DIVING SUPPLY, INC.,

        **Plaintiff,**

v.                              **Civil Action No. 2:14cv380**

HEINRICH STEVE MOSES,

        **Defendant.**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on a Motion for Temporary Restraining Order filed on July 25, 2014 by Atlantic Diving Supply, Inc. ("ADS" or "Plaintiff"). ECF No. 3. On July 25 and July 28, 2014, the Court conducted hearings on Plaintiff's motion and ultimately determined that such motion should be construed as a Motion for Preliminary Injunction because Defendant Heinrich Steve Moses ("Defendant") had received notice of such motion, participating and testifying by telephone in the second hearing. <u>See</u> July 28, 2014 Hr'g Tr., ECF No. 12. After considering the testimony and evidence presented at the hearing, as well as all of the filings submitted by both parties, for the reasons stated below, Plaintiff's motion for a preliminary injunction is **GRANTED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is "a Virginia corporation with its principal place of business in Virginia Beach, Virginia." Verified Compl. ¶ 2, ECF No. 1. Plaintiff "specializes in equipment,

1

procurement, and support solutions for the military, law enforcement, first responders, and the defense industry." Id. ¶ 6. Defendant, "a resident of Hawaii," was employed by Plaintiff in 2010 "as a Regional Account Manager for Hawaii and Korea." Id. ¶¶ 3, 7.[1] In December 2011, Plaintiff presented Defendant with an Employment Agreement ("the Agreement"), which Defendant signed. Verified Answer ¶ 8, ECF No. 9.[2] The Agreement contains a "Jurisdiction and Venue" provision, which states that "Employee hereby irrevocably submits to the jurisdiction and exclusive venue of the Federal or State Courts in the City of Norfolk, Virginia, in any action or proceeding relating to this Agreement." ADS Inc. Employment Agreement ¶ 17, ECF No. 1-1. In a separate "Governing Law" section, the Agreement provides that it "shall be governed by and construed in accordance with the laws of the State of Delaware." Id. ¶ 19.

---

[1]    The Employment Agreement describes Defendant as a Sales Representative. See ADS Inc. Employment Agreement ¶ B, ECF No. 1-1.

[2]    The pro se Defendant filed a response entitled "Verified Answer," attached to which was an affidavit. ECF Nos. 9, 9-1. Because Defendant included on each document an electronic signature, rather than an original signature, Defendant's submissions were filed "subject to defect due to lack of signature." See Fed. R. Civ. P. 11(a) (requiring signature by unrepresented party, but allowing the party to promptly correct). At the July 28, 2014 hearing on Plaintiff's motion, Defendant affirmed that he had filed such Answer with the Court and affirmed the accuracy of the Affidavit attached to his Answer. See Fed. R. Civ. P. 11(b). Thus, although Defendant has not yet submitted the properly sworn documents to the Court, the Court considers both the Verified Answer and the attached Affidavit as sworn by Defendant.

## Non-Solicitation of Customers

Paragraph 5 of the Agreement, entitled "Non-Solicitation of Customers," provides, in relevant part:

> (a) Employee will not, for a period of one year following the last day of Employee's employment ("Restricted Period"), compete with ADS by soliciting, participating in soliciting, and/or accepting Competing Business from
>
>> (i) any person or entity that was a customer of ADS at any time during the one-year period prior to the last day of Employee's employment, from whom or which Employee solicited and/or accepted business on behalf of ADS or to whom or which Employee provided products and/or services during the one-year period preceding Employee's last day of employment with ADS;
>>
>> (ii) any person or entity that was a customer of ADS at any time during the one-year period prior to the last day of Employee's employment about whom or which Employee acquired proprietary and/or confidential information during the one-year period prior to the last day of Employee's employment with ADS; or
>>
>> (iii) any person or entity with whom or which Employee on behalf of ADS was actively seeking to provide products or services in the last six months of Employee's employment;

ADS Inc. Employment Agreement ¶ 5, ECF No. 1-1. The Agreement defines "customer," in the context of "a state, federal or local government entity, or any agency thereof," as "the office, department, command center, and/or individual with whom Employee conducted business on behalf of ADS or about whom or which Employee acquired propriety [sic] and/or confidential information within the one-year period preceding the last day of Employee's employment." Id. Defendant's last day of employment

3

with Plaintiff was November 21, 2013. Verified Compl. ¶ 18, ECF No. 1.

Plaintiff alleges that, during "the last two years of [Defendant's] employment with ADS, [Defendant] spent a significant amount of his time visiting" the 25th Infantry Division of the United States Army ("the 25th ID"), located in Hawaii. Id. ¶ 15. Plaintiff contends that, during the "last two years of [Defendant's] employment," Defendant was also "working on a significant future opportunity with the 25th ID," in which the "25th ID anticipated a substantial procurement for additional training related to improving jungle operations for the 25th ID's training facility." Id. ¶ 17. According to Plaintiff's Verified Complaint, Defendant "spent significant amounts of time and efforts as an ADS employee with the 25th ID to learn about their anticipated needs for this jungle procurement," and at "the end of [Defendant's] employment, he was actively working on the future jungle training opportunity with the 25th ID." Id. ¶¶ 17-18.

On July 22, 2014, Plaintiff received an email invitation from the "25th ID G4 . . . to attend the first JOTC Equipment Vendor Meeting at the JOTC/Lightning Academy." Mark Folkerts July 22, 2014 Email, ECF No. 1-2. The purpose of the meeting is "to discuss individual quality of life and protection equipment in a jungle environment that [Plaintiff and its vendors] would like to petition the Army for purchase in the next coming

4

years." Id. Plaintiff will be provided with "comments and lessons learned from several jungle school rotations" so that Plaintiff can help "identify ways to close those gaps." Id. The email provided that the meeting "could lead to a return to Schofield Barracks on 3-5 Sep 2014 for the Jungle Equipment Interchange Meeting," where Plaintiff would have "a chance to show [its] items to Army wide agencies as well as discuss how [Plaintiff] can assist the Army with performing in the jungle operations environment more effectively." Id. The email clarified, "No one at this meeting is authorized to purchase for the government or permit the execution of any contract. This meeting is purely for discussion and determination as to the way forward." Id.

Also invited to the JOTC Equipment Vendor Meeting is Defendant, who Plaintiff learned is currently working for W.S. Darley & Company ("Darley"), "a direct competitor of Plaintiff [that] offers substantially similar products as those provided by [Plaintiff]." Verified Compl. ¶ 22, ECF No. 1. Plaintiff contends that "[Defendant's] involvement with the 25th ID opportunity violates the Agreement [Defendant] has with ADS." Pl.'s Mem. Supp. Mot. for Prelim. Inj. at 4, ECF No. 4. Plaintiff asserts that it "has invested significant time and resources in the 25th ID opportunity through [Defendant's] time," and that it "will be irreparably harmed if [Defendant] continues to pursue this jungle opportunity on behalf of Darley

due to the unfair advantage from the relationships [he] developed while being paid a salary by ADS as well as his knowledge of ADS's pricing." Verified Compl. ¶¶ 27, 30, ECF No. 1.

Defendant "denie[s] that the 25th ID is a single customer or entity with whom [he] worked." Verified Answer ¶ 15, ECF No. 9. Defendant asserts that "[t]here are approximately 91 companies in the 25th ID, and each company may have drastically different duties and therefore different equipment needs." Affidavit of Moses ¶ 17, ECF No. 9-1. Thus, Defendant alleges that "most companies or other command sub-units with unique and distinct roles and duties will each have their own procurement staff." Id. Defendant concedes that "[s]everal of those sub-units within the 25th ID were [his] customers," id., but "[t]o say that the 25th ID was [his] 'customer' just because it was higher up the command chain is absurd and meaningless." Id. ¶¶ 17-18.

Specifically regarding the JOTC opportunity, Defendant alleges, "[a]pproximately two years ago, and more than one year before to [sic] my termination by ADS, I was asked by a Command Sergeant Major of 25th ID to put together an equipment list for a proposed Jungle Operation Training Course ('JOTC') unit." Id. ¶ 40. Defendant asserts that he "proposed a list of equipment, which was never adopted." Id. The next time Defendant alleges he "heard anything about the JOTC unit was when [he] was

contacted on July 8, 2014 by personnel at the US Army Pacific G4 Supply and Services unit," which Defendant claims is "a completely separate office from the 25th ID G4." Id. ¶ 43. Defendant claims that the "first time [he] received any information about JOTC equipment requirements was approximately three weeks ago." Id. ¶ 45. Defendant asserts that he is "not attending the July 31, 2014 meeting"[3] and has "not conveyed any information or advice to [Darley's representative] other than the publicly available information from the invitations and the information provided to [him] by JOTC." Id. ¶ 52. Defendant vigorously alleges that he has "not solicited any customers . . . in violation of [his] employment agreement with ADS." Id. ¶ 53.

### Non-Solicitation of Vendors and Suppliers

Paragraph 6 of the Agreement, entitled "Non-Solicitation of Vendors and Suppliers," provides:

> Employee further agrees that during the Restricted Period, Employee shall not compete with ADS by soliciting the trade of, or trading with, any "partner supplier" of ADS with whom Employee had contact and/or conducted business during the one-year period preceding Employee's last day of employment with ADS for purposes of securing products, services and/or merchandise that are the same as or competitive with those Employee procured during his employment with ADS for or on behalf of any individual engaged in a Competing Business.

---

[3] The July 31, 2014 meeting is scheduled to take place in Hawaii at 0830-1230, which is 2:30-6:30 p.m. EST.

ADS Inc. Employment Agreement ¶ 6, ECF No. 1-1. The Agreement does not provide a definition for "partner supplier," but defines "Competing Business" as "the provision of products or services substantially similar to those provided by ADS." Id. ¶ 5(c).

Plaintiff alleges that Defendant has improperly approached Plaintiff's "partner suppliers, including but not limited to Blue Force Gear, ESS, and Harris Corporation," in violation of the Agreement, "and tried to solicit their business on behalf of Darley with the promise that he will be able to generate business opportunities for their products with his customers." Verified Compl. ¶¶ 24-25, ECF No. 1. In addition, Plaintiff alleges that Defendant has approached Plaintiff's vendors and "sought to have the vendors provide Darley, instead of ADS, the functional discounts [Defendant] earned while at ADS." Id. ¶ 29. Plaintiff contends that it "is likely to be irreparably harmed if [Defendant] . . . continues to work with ADS's partner suppliers on behalf of Darley, a direct ADS competitor." Id. ¶ 26.

Defendant "[d]enie[s] that ADS has any exclusive 'partner supplier' relationship with any vendor currently being solicited by [Defendant]." Verified Answer ¶ 28, ECF No. 9. Defendant asserts that "Blue Force Gear and Harris Corporation are vendors who work with all Prime Vendors and utilize the DOR [Dealer of Record] system to determine preferential pricing." Id. ¶ 25.

Defendant explains that "many vendors, including Blue Force Gear and Harris Corporation, operate on the DOR system, not by offering a discount to one exclusive company, but rather by offering preferential pricing to the Prime Vendor – which the vendor then identifies as the DOR – that has brought them an opportunity." Id. ¶ 28. Although Defendant admits that he "has solicited these vendors to try to obtain DOR status for Darley in their products," Defendant maintains that "Blue Force Gear and Harris Corporation are [not] 'partner suppliers' of ADS." Id. ¶ 25.

### Injunctive Relief

Paragraph 12 of the Agreement, entitled "Injunctive Relief," provides that the parties "agree that irreparable injury will result to Employer in the event Employee violates any restrictive covenant or affirmative obligation contained in paragraphs 5-9 of this Agreement." ADS Inc. Employment Agreement ¶ 12(a), ECF No. 1-1. Furthermore, "Employee acknowledges that the remedies at law for any breach . . . will be inadequate and that Employer shall be entitled to injunctive relief against Employee, in addition to any other remedy that is available, at law or in equity." Id. Paragraph 12 also includes a provision providing "that the non-disclosure and non-solicitation obligations contained herein shall be extended by the length of time which Employee shall have been in breach of any of said provisions." Id. ¶ 12(b).

## Breach of Contract Claim

Count One of Plaintiff's Verified Complaint alleges "Breach of Contract" by Defendant.   Verified Compl. ¶ 31, ECF No. 1. Plaintiff asserts that Defendant "is violating Paragraph 5 of the Agreement by his involvement in soliciting business from the 25th ID on behalf of Darley," as well as "other ADS customers." Id. ¶ 36.   Plaintiff asserts that Defendant "is violating Paragraph 6 of the Agreement by continuing to do business with ADS's partner suppliers on behalf of Darley."   Id.   Thus, Plaintiff requests "temporary, preliminary, and permanent injunctive relief against [Defendant] restraining him from soliciting or accepting competitive business from ADS's customers" and "temporary and permanent injunctive relief restraining [Defendant] from working with ADS's partner suppliers to compete with ADS."   Id. ¶ 38.   Plaintiff specifically requests that the Court enjoin Defendant from "attending the JOTC Equipment Vendor meeting on July 31, 2014," id., where the related business opportunity "is expected to generate approximately seven to ten million dollars in sales over the next few years" and the "profit margin on these sales would far exceed $75,000.00," id. at 4.   Plaintiff also seeks monetary damages and "any additional relief the Court may deem appropriate."   Id.

## II. STANDARD OF REVIEW

### A. Governing Law Standard

"A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." Francis v. Allstate Ins. Co., 709 F.3d 362, 369 (4th Cir. 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Erie R.R. Co. v. Tompkins, 305 U.S. 64, 79 (1938)). "Virginia has long adhered to the traditional conflicts principle that the 'nature, validity and interpretation of contracts are governed by the law of the place where made, unless the contrary appears to be the express intention of the parties.'" Crosson v. Conlee, 745 F.2d 896, 902 (4th Cir. 1984) (quoting Woodson v. Celina Mut. Ins. Co., 177 S.E.2d 610, 613 (Va. 1970)). "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007) (citing Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999)). If the selected "state is reasonably related to the purpose of the agreement, [the court] will apply the parties' choice of substantive law." Hooper v. Musolino, 364 S.E.2d 207, 211 (Va. 1988). Of course, it has long been established that, when sitting in diversity, "federal courts are to apply . . . federal 'procedural' law." Hanna v. Plumer, 380 U.S. 460, 471 (1965).

## B. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy," Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008), the purpose of which "is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits," In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20. The United States Court of Appeals for the Fourth Circuit requires the moving party to "'clearly show' that it is likely to succeed on the merits." Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011) (alterations omitted) (quoting Winter, 555 U.S. at 22.

A preliminary injunction is "never awarded as of right." Winter, 555 U.S. at 24; cf. Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982) (observing that "a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law"). Rather, the court, in its sound discretion, "must balance the competing claims of injury and must consider the effect on each party of the granting or

12

withholding of the requested relief." Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987). Indeed, "'preliminary injunctions are extraordinary remedies involving the exercise of a very far-reaching power,'" MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1992)), and should be granted "'only in the limited circumstances which clearly demand it.'" Direx Israel, 952 F.2d at 811 (alteration omitted) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 799 (3d Cir. 1989)).

Rule 65 of the Federal Rules of Civil Procedure governs the procedure for issuing temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65. "Every order granting an injunction" must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required." Id.

### III. DISCUSSION

### A. Governing Law

The Court must first determine what law governs Plaintiff's request for injunctive relief. Because the Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000.00, it looks to the choice-of-law rules of Virginia. Francis, 709 F.3d at 369. The Agreement between Plaintiff and

13

Defendant contains a choice-of-law provision, which designates "the laws of the State of Delaware" as the governing law. ADS Inc. Employment Agreement ¶ 19, ECF No. 1-1. At the July 25, 2014 hearing, Plaintiff asserted that ADS was formed in Delaware. Because the state of Delaware "is reasonably related to the purpose of the agreement, [the court] will apply the parties' choice of substantive law," Hooper, 364 S.E.2d at 211, keeping in mind that all procedural issues will be governed by federal procedural law, Hanna, 380 U.S. at 471.

## B. Plaintiff's Request for Injunctive Relief

Plaintiff requests injunctive relief based upon Defendant's alleged breach of his employment agreement, which Plaintiff asserts is "a valid, binding, and enforceable contractual relationship." Verified Compl. ¶ 32, ECF No. 1. Plaintiff alleges that Defendant "is violating Paragraph 5 of the Agreement by his involvement in soliciting business from the 25th ID on behalf of Darley." Id. ¶ 36. Plaintiff further asserts that Defendant "is also soliciting other ADS customers in violation of Paragraph 5 of the Agreement." Id. Plaintiff alleges that Defendant "is violating Paragraph 6 of the Agreement by continuing to do business with ADS's partner suppliers on behalf of Darley." Id. Defendant denies that he is in violation of either Paragraphs 5 or 6 of the Agreement, reiterating such denial during his sworn testimony at the July

14

28, 2014 hearing.  Verified Answer ¶ 36, ECF No. 9; July 28, 2014 Hr'g Tr. at 74, ECF No. 12.

### 1. Likelihood of Success

As discussed above, the Court must consider whether Plaintiff "'clearly show[s]' that it is likely to succeed on the merits" of its breach-of-contract claim.  Dewhurst, 649 F.3d at 290.  Under Delaware law, the elements of a breach of contract claim are: "a) the existence of a contract; b) the breach of an obligation imposed by that contract; and c) resulting damages to the plaintiff."  Lorenzetti v. Hodges, 62 A.3d 1224 (Del. 2013) (table decision) (citing VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del. 2003)).  Plaintiff's likelihood of success on its breach-of-contract claim depends, in part, upon the enforceability of the restrictive covenants contained in the Agreement.  In evaluating restrictive covenants under Delaware law, a court looks to whether the contract "(1) meet[s] general contract law requirements, (2) [is] reasonable in scope and duration, both geographically and temporally, (3) advance[s] a legitimate economic interest of the party enforcing the covenant, and (4) survive[s] a balance of the equities."  All Pro Maids, Inc. v. Layton, No. Civ. A. 058-N, 2004 Del. Ch. LEXIS 116, at *17 (Del. Ch. Aug. 10, 2004).

### a. Existence of a Contract

The parties do not dispute that a contract exists between Plaintiff and Defendant, although Defendant "[d]enie[s] that the

15

restrictive covenants contained in the Employment Agreement are valid, binding, or enforceable." Verified Answer at ¶ 32, ECF No. 9. The Court finds that the Agreement is reasonably limited in both time and scope, restricting Defendant - for only one year - from soliciting or accepting business from only those customers of ADS from which Defendant had solicited or accepted business, to which he had provided products or services, or about which he had obtained confidential or proprietary information during the last year of his employment, or actively sought to provide products or services during the last six months of his employment. Delaware law generally supports the reasonableness of one-year nationwide restrictive covenants. See O'Leary v. Telecom Res. Serv., LLC, No. 10C-03-108-JOH, 2011 Del. Super. LEXIS 36, 2011 WL 379300, at *5 (Del. Super. Ct. Jan. 14, 2011) ("Delaware courts and other jurisdictions have permitted a nationwide non-compete covenant in certain circumstances and are not averse to broad geographical scopes when they are necessary to protect the legitimate business interest of the party trying to enforce the covenant."). Even in the absence of a geographical scope, if "the employee would gain from the employment some advantage in any part of that market, then it is appropriate that an employee subject to a non-competition agreement be prohibited from soliciting those customers on behalf of a competitor regardless of their

16

geographic location." Research & Trading Corp. v. Pfuhl, No. 12527, 1992 Del. Ch. LEXIS 234, at *32 (Del. Ch. Nov. 18, 1992).

Furthermore, a limited restrictive covenant in an employment agreement "is not void as against public policy when the purpose of such agreement and its reasonable effect is to protect an employer from sustaining damages which an employee's subsequent competition may cause." Faw, Casson & Co. v. Cranston, 375 A.2d 463, 465 (Del. Ch. 1977) (citing Capital Bakers, Inc. v. Leahy, 178 A. 648, 649 (Del. Ch. 1935)). The Court finds that the non-solicitation clauses in the Agreement adequately serve "one of the purposes of such a covenant," namely, "to protect the employer from loss of business arising out of an employee's profitable association with the former[] employer's clientele." Id. at 467; see also Pfuhl, 1992 Del. Ch. LEXIS 234 at *33 (recognizing that employers have legitimate interests in "protecting from misappropriation the goodwill that, through its employees, it has created"); Hammermill Paper Co. v. Palese, No. 7128, 1983 Del. Ch. LEXIS 400, at *14 (Del. Ch. June 14, 1983) (observing that an employer has a right to protect the good will it bought and fostered through its employees"). Accordingly, finding no evidence supporting Defendant's allegation that the "restrictive covenants contained in the Employment Agreement are [not] valid, binding, or

17

enforceable," Verified Answer at ¶ 32, ECF No. 9,[4] the Court finds that Plaintiff would likely succeed in proving the existence of a contract under Delaware law.

### b. Breach of an Obligation

The Court also finds that Plaintiff would likely succeed in proving a breach by Defendant of at least one provision of the Agreement.  Defendant argues that he is not in breach of the Agreement, in part, because the 25th ID itself is not a "customer" as anticipated by the Agreement and because his prior involvement with "a proposed Jungle Operation Training Course" while he was employed by Plaintiff occurred "[a]pproximately two years ago, and more than one year [prior] to my termination by [Plaintiff]." Affidavit of Moses ¶ 40, ECF No. 9-1.

### i. 2013 Commission Report

At the July 28, 2014 hearing, Plaintiff contended that the 25th ID was a customer with whom Defendant had conducted business during his last year of employment with Plaintiff.  In

---

[4] Defendant also asserts that he received no consideration in exchange for his signature.  Defendant asserts that the first time he "signed any employment non-compete agreement with ADS" was not until he "had been working for ADS for a little less than two years" and that he "received no additional money, no bonus, no guaranteed period of employment, and no change in my compensation scheme." Affidavit of Moses at ¶¶ 11-12, ECF No. 9-1.  However, at the July 28, 2014 hearing on the motion for preliminary injunction, Plaintiff asserted that Defendant "would have signed [an Agreement] when he joined [ADS] in 2009" and "would have signed one each subsequent year of employment." July 28, 2014 Hr'g Tr. at 13, ECF No. 12.  Plaintiff explained that it presented the Agreement to employees "every year," in order "to remind them of their ongoing commitments."  Id.  Plaintiff also presented evidence that, when Defendant signed the 2011 agreement, he was given additional territory with the consequent likelihood of an increase in his commissions.  See July 28, 2014 Hr'g Tr. at 13-14, ECF No. 12.

support, Plaintiff submitted Defendant's "commission report for 2013," which shows Defendant's "sales that delivered in 2013." July 28, 2014 Hr'g Tr. at 19, ECF No. 12.   According to Plaintiff's witness, the report shows that Defendant's "primary customer is the 25th ID," as well as its "subordinate units." Id. at 20.   Specifically, the 2013 commission report shows 36 sales to the 25th ID and its subordinate units.   One sale in the amount of $468,893.10 was <u>delivered</u> in 2013 to the "25TH ID" and 35 sales were <u>delivered</u> in 2013 to "subordinate units" of the 25th ID, including "25TH ID 2ND BCT," "25TH ID 2ND SBCT HQ," "25TH ID 2ND SBCT 1ST BN 21ST INF HHC," "25TH ID 3RD BCT HQ," and "25TH ID AVN."   Pl.'s Exh. 1.   However, the Court notes that the single $468,893.10 sale delivered to the 25th ID in 2013 appears to have occurred on October 30, 2012, prior to Defendant's final year of employment with ADS.   See Pl.'s Exh. 1 (showing "Tx Date" of "10/30/12").   Thus, the 2013 commission report does not appear to support Plaintiff's contention that the 25th ID "was a customer of ADS at any time during the one-year period prior to the last day of Employee's employment, from whom or which Employee solicited and/or accepted business on behalf of ADS," that Defendant "acquired proprietary and/or confidential information" about the 25th ID "during the one-year period prior to the last day of [Defendant's] employment," id. ¶ 5(a)(ii), or that Defendant "was actively seeking to provide products or services" to the 25th ID "in the last six months of

[Defendant's] employment," id. ¶ 5(a)(iii).  ADS Inc. Employment Agreement ¶ 5, ECF No. 1-1.

### ii. Email Thread

However, the Court finds that the email thread submitted by Plaintiff at the July 28, 2014 hearing sufficiently demonstrates that the 25th ID was a customer of ADS "from whom or which [Defendant] solicited and/or accepted business on behalf of ADS[,] to whom or which [Defendant] provided products and/or services," or "about whom or which [Defendant] acquired proprietary and/or confidential information . . . during the one-year period preceding [his] last day of employment with ADS," or "with whom or which [Defendant] on behalf of ADS was actively seeking to provide products and/or services in the last six months of [his] employment."  Id. ¶¶ 5(a)(i)-(iii). According to the email thread, 25th ID Command Sergeant Major Ray Devens, Jr. sent an email on May 31, 2013 to several "team Leaders" in the 25th ID.  Pl.'s Exh. 2.  Devens attached to the email pictures and descriptions of various pieces of military clothing and equipment, and informed the team leaders that he "want[ed] the attached items to be on display to touch and on a slideshow to discuss" at a "Jungle Warfare Capability day for [the] Division."  Id.  Devens also instructed the team leaders "to seek out other individual Soldier survivability items for Offensive and Defensive operations in the jungle environment."  Id.

Devens suggested that the team leaders contact "units/vend[o]rs working jungle capabilities and those specific items (attached) already like . . . Mr. Moses for ADS, so they can provide their expertise during the brief and let us know what really works and what does not." Id. The email thread also indicates that Defendant forwarded Devens's email sometime between May 31, 2013 and June 11, 2013. Id. Defendant stated in the email that he had "made contact with some vendors to send [him] their proposed equipment for" the "briefing with all the Sergeants to CSMs in the 25th Infantry Division." Id. The email also included "a list of gear [Defendant did not] have for [his] briefing." Id.

At the July 28, 2014 hearing, Defendant testified that there is a "distinction between . . . who [he] saw as a customer when [he was] working at ADS and the customer in the JOTC procurement . . . which is going to be getting started in earnest on July 31." Id. at 60. Defendant explained that "all of those instructors or personnel at JOTC" with whom Defendant had engaged while he was employed at ADS "are no longer there." Id. at 61. In addition, "[a]ll of [Defendant's] involvement with, when [he] was employed with ADS with the 25th ID G4 [was] with those personnel [who] are no longer there." Id. at 61. Thus, Defendant reasoned, "as the commander of the 25th Infantry Division changed out and they have a new commander now and a new sergeant now . . . [a]nd with everybody being new in both

21

entities, the JOTC and 25th ID, it is like starting brand new with a brand new customer." Id. Defendant testified that he "was notified of the JOTC opportunity" as "a Darley representative" on "[July] 8 of this year." Id.[5] Thus, Defendant testified that he "look[s] at this as a new opportunity with different commands and with different people in place. So it's a whole different opportunity than what [he] worked with in the past." Id. at 61-62.

The Agreement defines a "customer" as "the office, department, command center, and/or individual with whom Employee conducted business on behalf of ADS or about whom or which Employee acquired propriety [sic] and/or confidential information within the one-year period preceding the last day of Employee's employment." ADS Inc. Employment Agreement ¶ 5, ECF No. 1-1 (emphasis added). Plaintiff asserted at the hearing that the 25th ID is the command center with which Defendant conducted business regarding the jungle warfare opportunity, regardless of the fact that the same individuals are no longer involved in the opportunity. Accordingly, because the evidence shows, and Defendant does not dispute, that Defendant received the email from Devens between May 31, 2013 and June 11, 2013,

---

[5] The Court notes that Defendant testified at the hearing that he was contacted about this opportunity on January 8, 2014. However, Defendant asserted in his affidavit that he began working with Darley "on April 1, 2014," and learned of the current opportunity "on July 8, 2014." See Affidavit of Moses ¶¶ 36, 43, ECF No. 9-1. Such discrepancy is probably an innocent misstatement, but bears noting.

indicating the requirements for the JOTC opportunity while Defendant worked for Plaintiff, and because Defendant actively worked on the opportunity by contacting vendors and preparing for the briefing to the 25th ID, the Court finds that the 25th ID was an ADS customer, from which Defendant had solicited business, to which Defendant had provided services, or about which Defendant had obtained proprietary or confidential information during the last year of his employment, and/or was actively seeking to provide products or services in the last six months of his employment.[6]

### iii. Sub-Units of the 25th ID

At this preliminary stage of the case, and based on the limited evidence currently before the Court, the Court rejects Plaintiff's view that all of the sub-units of the 25th ID are "customers" as anticipated by the Agreement. See July 28, 2014 Hr'g Tr. at 22, ECF No. 12 (testimony of Plaintiff's witness that, "[b]ased on [his] understanding of the agreement," Defendant is "prohibited from soliciting or doing business with . . . the 25th Infantry Division down"). Certainly, the 2013 commission report reflects, and Defendant concedes, that he conducted business during his last year of ADS employment with

---

[6] Because the Court finds that Plaintiff would likely prove a breach of Paragraph 5 of the Agreement, thus satisfying the "likelihood of success" prong of the preliminary injunction analysis, the Court need not consider whether Plaintiff would also likely prove a breach of Paragraph 6 of the Agreement, especially since Plaintiff's proposed Order does not mention any restrictions with respect to Plaintiff's vendors or suppliers. See Proposed Order, ECF No. 11.

several sub-units of the 25th ID.   See Affidavit of Moses ¶ 17, ECF No. 9-1 ("Several of those sub-units within the 25th ID were my customers.").   However, Plaintiff has not persuaded the Court that, simply because an entity is a sub-unit of the 25th ID, such sub-units are necessarily "customers."   Recognizing that the overall purpose of restrictive covenants in employment agreements is to prevent a former employee, for a limited period of time, from using protected information obtained during that employment either to the advantage of a future employer or to the detriment of the former employer, the Court observes that Plaintiff has submitted no evidence suggesting that Defendant received any protected information during his interactions with the 25th ID that would be either beneficial to Darley or detrimental to ADS during any interactions with sub-units of the 25th ID with which Defendant had not interacted during his final year of employment with ADS.

Keeping in mind that a "preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief,'" Dewhurst, 649 F.3d at 290 (emphasis added), the Court finds that Plaintiff has failed to make a "clear showing" that sub-units of the 25th ID are "customers" of ADS merely because they are sub-units of the 25th ID.   Thus, for purposes of the present preliminary injunction, the Court declines Plaintiff's invitation to consider restricting Defendant "from soliciting or

24

doing business with . . . the 25th Infantry Division down." July 28, 2014 Hr'g Tr. at 22, ECF No. 12. Nonetheless, for the reasons stated, the Court finds that Plaintiff would likely succeed in showing a breach by Defendant of Paragraph 5 of the Agreement because Defendant conducted business with the 25th ID, specifically regarding the jungle warfare opportunity, during his last year of employment with ADS.

### c. Damages from the Breach

The Court finds that Plaintiff would likely succeed in proving damages from Defendant's breach. Plaintiff asserted, through counsel, at the July 25, 2014 _ex parte_ hearing that Defendant is familiar with Plaintiff's pricing, which would require Defendant to "take a different pricing strategy" with respect to the products and services it planned to offer at the JOTC meeting. Plaintiff's witness confirmed at the July 28, 2014 hearing that Defendant "understands [Plaintiff's] strategy for jungle warfare ensemble" and "the pricing." July 28, 2014 Hr'g Tr. at 76, ECF No. 12. Plaintiff would also likely prove damages in the event that Darley, through Defendant, ultimately wins the JOTC bid over ADS.

Accordingly, because the Court finds that, under Delaware law, Plaintiff would likely succeed in proving that the Agreement is a valid contract, that Defendant would be in breach of the Agreement if he attends the July 31, 2014 JOTC meeting and continues to solicit business from the 25th ID, and that

Plaintiff would be damaged by Defendant's breach, the Court finds that Plaintiff has "'clearly show[n]' that it is likely to succeed on the merits" of its breach-of-contract claim. Dewhurst, 649 F.3d at 290.

## 2. Irreparable Harm

The Court next considers whether Plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief." Winter, 555 U.S. at 20. Plaintiff asserted at the July 28, 2014 hearing that it "satisfied the irreparable harm [prong] through the waiver provision in the contract," which the Court addressed above with respect to Plaintiff's damages.

The Court finds that Plaintiff satisfies the "irreparable harm" prong of the preliminary injunction analysis. Paragraph 12 of the Agreement clearly reflects the parties' "agree[ment] that irreparable injury will result to [Plaintiff] in the event [Defendant] violates any restrictive covenant or affirmative obligation contained in paragraphs 5-9 of this Agreement." ADS Inc. Employment Agreement ¶ 12(a), ECF No. 1-1 (emphasis added). Delaware "courts have long held that 'contractual stipulations as to irreparable harm alone suffice to establish that element for the purpose of issuing . . . injunctive relief.'" Martin Marietta Materials, Inc. v. Vulcan Materials Co., 68 A.3d 1208, 1226 (Del. 2012); see also True N. Commc'ns Inc. v. Publicis S.A., 711 A.2d 34, 44 (Del. Ch. 1997) ("The irreparable harm element of the injunction standard is established by

[defendant's] own contractual stipulation . . . . Defendants cannot now say there is no irreparable harm.").

Even if the Court disregarded the waiver provision recognized under Delaware law, it finds that Plaintiff has produced sufficient evidence, under either Delaware law or federal law, to meet its burden of demonstrating irreparable harm. Plaintiff's witness testified at the July 28, 2014 that, if Darley, through Defendant, won the JOTC contract, the damages to Plaintiff could not possibly be calculated by looking to Darley's profits. See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551 (4th Cir. 1994) ("[I]rreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." (quoting Danielson v. Local 275, 479 F.2d 1033, 1037 (2d Cir. 1973)); Nat'l Indus. Group (Holding) v. Carlyle Inv. Mgmt., 67 A.3d 373, 383 (Del. 2013) ("Irreparable harm 'consists of harm for which there can be no adequate recompense at law.'" (citation omitted)).

Specifically, Plaintiff's witness testified that Plaintiff has "upwards of 18 people in [the] division that do nothing but call on the Army," where "Darley has maybe two people at most that call on the Army." July 28, 2014 Hr'g Tr. at 28, ECF No. 12. The witness claimed that Plaintiff's "Army team that just supports the Army is larger than Darley's entire sales force covering the entire U.S. military, federal government,

27

international sales." <u>Id.</u> at 32. In addition, the witness asserted, Plaintiff has "a much broader network of products that [it has] the ability to show a customer." <u>Id.</u> With respect to the contract at issue, the witness explained that Plaintiff views the contract "very much as a license to hunt contract," where "[o]nce the contract is in place, [Plaintiff's] sales group is, all across the United States is going to be talking to Army units about the products that are on here and driving business through it." <u>Id.</u> at 29. The witness testified that if Darley was able to "reach 10 percent of what we were able to do, that would be success for them. So their profits would not even come close to compensating [Plaintiff] for the loss that we would have to the contract." <u>Id.</u> The witness testified that, "based on all previous indications on how ADS performs with the same contract [as Darley], [Plaintiff] will . . . do 20 times more sales through a given contract." <u>Id.</u> at 31. Thus, "it would be very difficult to come up with any type of dollar value" and it "certainly couldn't be based upon what Darley did through that contract or what Darley's sales were or the sales that [Defendant] did through the contract." <u>Id.</u>

Accordingly, because the parties stipulated that irreparable injury would result from a breach of Paragraph 5 of the Agreement, which the Court found Plaintiff would likely succeed in proving, and because, regardless of the stipulation, Plaintiff has shown that it "is likely to suffer irreparable

harm in the absence of preliminary relief," <u>Winter</u>, 555 U.S. at 20, the Court finds that Plaintiff has satisfied the "irreparable harm" prong of the preliminary injunction analysis.

### 3. Balance of Equities

The Court next considers whether "the balance of equities tips in [Plaintiff's] favor. <u>Winter</u>, 555 U.S. at 20. Plaintiff contends that the "balance of equities tips decisively in [Plaintiff's] favor" because if the injunction "does not issue, [Plaintiff] could lose the chance to competitively bid for this important opportunity with the 25th ID." Pl.'s Br. Supp. Mot. for Prelim. Inj. at 7, ECF No. 4. On the other hand, if the injunction does issue, Plaintiff asserts, Defendant "would not be giving up anything that he is otherwise obligated to do pursuant to the Agreement." <u>Id.</u> Defendant disagrees, arguing that, if the injunction issues, he "wouldn't be able to earn a living in [his] area," and that he would have to travel to "Korea, Japan, Okinawa, Guam and the Island of Saipan" in order "to conduct business." July 28, 2014 Hr'g Tr. at 80-81, ECF No. 12. Defendant further asserts that the financial impact to him would be "roughly a hundred thousand dollars a year." <u>Id.</u> at 81.

Although the Court recognizes Defendant's potential financial loss, it agrees with Plaintiff that the requested injunction merely requires Defendant to do what he "is otherwise obligated to do pursuant to the Agreement." Pl.'s Br. Supp.

29

Mot. for Prelim. Inj. at 7, ECF No. 4.[7]  The Court also notes that the Agreement expires by its own terms in less than four months.  Furthermore, the Court has narrowed the scope of Plaintiff's request for injunctive relief by declining to restrict Defendant from soliciting business from <u>all</u> of the sub-units of the 25th ID, merely <u>because</u> they are sub-units of the 25th ID.  Thus, the Court finds that the balance of equities favors Plaintiff.

### 4. Public Interest

The Court finally considers whether "an injunction is in the public interest."  <u>Winter</u>, 555 U.S. at 20.  Plaintiff asserts that "[p]ublic policy interests will be furthered by the issuance of a" preliminary injunction because "requiring [Defendant] to perform under the Agreement" furthers the "general principle that parties should abide by their agreements" and because "the public interest is furthered where the status quo is maintained and business interests are spared significant harm."  Pl.'s Br. Supp. Mot. for Prelim. Inj. at 7-8, ECF No. 4.  Defendant argues that it is not "good for the public [if] the Army [gets] less information instead of more."  July 28, 2014 Hr'g Tr. at 74, ECF No. 12.

---

[7] Defendant testified that, after he left Plaintiff's employment, he asked Plaintiff for a copy of his employment agreement so that he could examine the non-compete language, but that Plaintiff never provided such employment agreement.  While the Court considers such unrefuted assertion, it does not relieve Defendant of his obligations under the Agreement.  Any relevance of such unmet request may be developed later in the proceedings.

The public interest is well-served when parties abide by their agreements.  Furthermore, Defendant has asserted that someone from Darley will be attending the JOTC meeting.  Thus, the public interest in the Army having access to more information is not a significant issue.  Thus, the Court finds that an injunction would be "in the public interest."  <u>Winter</u>, 555 U.S. at 20.

## IV. CONCLUSION

In accord with the above and Rule 65 of the Federal Rules of Civil Procedure, it is hereby **ORDERED, DECREED, and ADJUDGED:**

Defendant, Heinrich Steve Moses, is restrained from attending the JOTC Equipment Vendor meeting on July 31, 2014 and, from the entry of this order until the end of the day on November 21, 2014, from having any further involvement in the pursuit of business directly from the 25th ID.

Defendant is also restrained from having any further involvement in the pursuit of business from any of the units that make up the 25th ID for products or services similar to those offered by ADS, including providing any input, information, or documentation to anyone at Darley about the 25th ID and any of the units that make up the 25th ID, provided that, within the last year of his employment with ADS, Defendant solicited or accepted business, provided products or services, or acquired proprietary or confidential information, with respect to such units making up the 25th ID.  This does not

31

restrict Defendant from soliciting, participating in soliciting, and/or accepting competing business with units of the 25th ID from which Defendant was not soliciting or accepting business, to which Defendant had not provided products and/or services, or about which Defendant had not acquired proprietary and/or confidential information during the year before his departure from ADS. Nor does it restrict Defendant from soliciting, participating in soliciting, and/or accepting competing business with units of the 25th ID to which Defendant was not actively seeking to provide products and/or services during the last six months before his departure from ADS.

ADS shall post a bond of $25,000 to indemnify Defendant from any damages incurred by reason of this Order.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

                                                /s/

                                             Mark S. Davis
                           UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 31 , 2014
12:48 p.m. EST